IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOBIAS LATHAM, | No. 19-CV-451-GJP |
| *Plaintiff*, | |
| v. | |
| WEYERHAEUSER COMPANY and PHILLIP RISSMILLER, | |
| *Defendants*. | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Per Federal Rule of Civil Procedure 56, Defendants Weyerhaeuser Company and Phillip Rissmiller hereby move for summary judgment in their favor, and against Plaintiff Tobias Latham, on all Counts in the Complaint. For the reasons set forth below, and in the accompanying Brief in Support of this Motion, which is incorporated by reference, no genuine issues of material fact exist and Defendants are entitled to judgment in their favor as a matter of law. Specifically, Defendants have complete immunity from suit under the Workers' Compensation Act, *see* 77 P.S. §§ 72, 481(a), through application of the borrowed servant doctrine. *See Claudio v. MGS Mach. Corp.*, 798 F. Supp. 2d 575, 582-84 (E.D. Pa. 2011); *see also JFC Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay)*, 680 A.2d 862, 864 (Pa. 1996). Further, Plaintiff Latham contractually agreed to waive the claims in the Complaint, and Defendants, as intended beneficiaries of that contract, are entitled to enforce the waiver. *See Republic Services of Pa., LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 476 (E.D. Pa. 2018). They are likewise entitled, under the same contact, to an award of reasonable attorney's fees and costs.

In further support of this Motion, and per Fed.R.Civ.P. 56(c) and Section II.D.4 of the Court's Policies and Procedures, Defendants submit the following statement of material facts that cannot be genuinely disputed:

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**I.     BACKGROUND**

1. Weyerhaeuser Company maintains a lumber distribution facility at 4225 East Braden Boulevard, Easton, PA 18040 (hereafter, the "Easton Facility"). **(Compl. ¶¶ 2, 8 (Voss Decl., Ex. A); Amd. Answer ¶¶ 2, 8 (Voss Decl., Ex. B).)**

2. The Easton Facility consists of indoor and outdoor operations. **(Compl. ¶ 9; Amd. Answer ¶ 9.)**

3. In the outdoor operations, lumber materials are arranged into rows and aisles to allow workers, forklifts, and other machinery to travel between the rows of materials. **(Compl. ¶ 10; Amd. Answer ¶ 10.)**

4. The following is a picture of the Easton Facility. **(Compl. ¶ 11; Amd. Answer ¶ 11.)**



## II.     THE INCIDENT: AUGUST 28, 2017

5. On August 28, 2017, Latham was a temporary laborer from Aerotek, Inc., a temporary staffing agency. **(Latham dep. 8:13-19 (Voss Decl., Ex. C); Latham-Aerotek Contract (Tobias Latham-Aerotek-06131886-00017-19) (Voss Decl., Ex. D); Compl. ¶ 7; Amd. Answer ¶ 7.)**

6. Aerotek, Inc. is a wholly owned subsidiary of Allegis Group. **(Compl. ¶ 7; Amd. Answer ¶ 7.)**

7. On August 28, 2017, Tobias Latham was working as a laborer at the Easton Facility. **(Latham dep. 17:13-21; Plaintiff's Response to Interrogatories ¶ 10b (Voss Decl., Ex. E); Compl. ¶ 8; Amd. Answer ¶ 8.)**

8. Latham was placed at the Easton Facility by Aerotek. **(Latham dep. 12:19-13:11; Compl. ¶ 8; Amd. Answer ¶ 8.)**

9. Latham's duties as a laborer included cutting lumber and banding it together. **(Latham dep. 14:15-15:8; Plaintiff's Response to Interrogatories ¶ 10b; Compl. ¶ 12; Amd. Answer ¶ 12.)**

10. While performing these duties on the morning of August 28, 2017, a forklift carrying 48 foot long pieces of lumber banded together by plastic straps approached Latham from behind. **(Latham dep. 45:17-19; Latham dep. 48:23-50:18; Compl. ¶ 13; Amd. Answer ¶ 13.)**

11. The forklift was operated by Weyerhaeuser employee Phillip Rissmiller. **(Latham dep. 48:23-50:18; Compl. ¶ 14; Amd. Answer ¶ 14.)**

12. As the forklift approached Latham, it contacted a piece of lumber causing the forklift to shake. **(Compl. ¶ 15; Amd. Answer ¶ 15.)**

13. The lumber being carried on the forklift broke free from the bands around the lumber, causing them to fall and make contact with Latham. **(Latham dep. 48:23-50:18; Compl. ¶ 16; Amd. Answer ¶ 16.)**

14. As a result of the incident, Latham suffered injuries to his head, left shoulder, low back, and left knee. **(Latham dep. 37:3-5; Latham dep. 41:11-22; Plaintiff's Response to Interrogatories ¶ 3.)**

### III. WEYERHAEUSER-ALLEGIS/AEROTEK CONTRACT

15. By contract dated September 21, 2009, Weyerhaeuser entered into an agreement with Allegis Group, Inc., d/b/a Aerotek, Inc., for temporary staffing services. **(Weyerhaeuser-Allegis/Aerotek Contract (WEYER00017-51) (Voss Decl., Ex. F).)**

16. Under the contract, Allegis/Aerotek is defined as the "sole Employer" for assigned personnel, and is responsible for their payroll, insurance, benefits, and taxes. **(Weyerhaeuser-Allegis/Aerotek Contract at Attachment B-Statement of Work, ¶ 2 (WEYER00026).)**

17. Under the contract, Weyerhaeuser and Allegis/Aerotek agreed that Allegis/Aerotek is the "Supplier" and that "assigned personnel of Supplier are and will be employed solely by Supplier." **(Weyerhaeuser-Allegis/Aerotek Contract at Attachment B-Statement of Work, ¶ 3.A (WEYER00028).)**

18. Under the contract, Weyerhaeuser is "responsible for the daily management and supervision of all Supplier assigned personnel." **(Weyerhaeuser-Allegis/Aerotek Contract at Attachment B-Statement of Work, ¶ 2 (WEYER00026).)**

19. In fact, Weyerhaeuser was responsible for the daily management and supervision of Aerotek employees at the Easton Facility. **(Roche dep. 93:21-94:13 (Voss Decl., Ex. G).)**

20. Specifically, Weyerhaeuser was responsible for the daily management and supervision of Tobias Latham. **(Roche dep. 94:6-13.)**

IV. **BORROWED SERVANT**

A. <u>**What Work to Do**</u>

21. Before beginning work at the Easton Facility, Latham was interviewed by Derek Roche. **(Latham dep. 13:18-23.)**

22. Derek Roche works for Weyerhaeuser Company. **(Latham dep. 18:18-24; Roche dep. 29:22-24.)**

23. Roche is now, and was in August 2017, the Site Operations Manager at the Easton Facility. **(Roche dep. 32:20-33:7.)**

24. During Latham's interview with Derek Roche, Roche and Latham discussed what was expected on the job site, what to wear, and general protocol. **(Latham dep. 14:4-9.)**

25. Derek Roche created Latham's assignments at the Easton Facility, which were then passed down to the manager and then the supervisor. **(Latham dep. 18:1-16; Roche dep. 94:6-13.)**

26. Employees of Weyerhaeuser told Latham what he was doing each day. **(Latham dep. 19:18-20; Roche dep. 94:6-13.)**

B. <u>**Where to do Work**</u>

27. Employees of Weyerhaeuser told Latham where to do his jobs at the Easton Facility. **(Latham dep. 19:21-23.)**

28. Sometimes Latham was reassigned in a day from one job to another at the Easton Facility, and he was usually reassigned by Mike Miller. **(Latham dep. 19:24-20:10.)**

29. Mike Miller was a manager at, and an employee of, Weyerhaeuser. **(Latham dep. 20:3-15; Roche dep. 94:9-13; Roche dep. 97:13-22.)**

30. Latham was sent to work at specific machines and areas at the Easton Facility by Mike Miller. **(Latham dep. 22:5-23:3.)**

31. Aerotek did not give Latham any direction on his assignments at the Easton Facility. **(Latham dep. 20:17-19; Roche dep. 94:15-95:8.)**

C. <u>How to do Work/Training</u>

32. Latham did not receive any training from Aerotek on how to perform his job at the Easton Facility. **(Latham dep. 12:6-8; Roche dep. 95:5-8.)**

33. Latham was taught how to accomplish his assignments as a laborer at the Easton Facility by employees of Weyerhaeuser. **(Latham dep. 19:4-13; Roche dep. 94:6-13; Roche dep. 97:13-98:9.)**

34. Latham was given safety training at the Easton Facility by Weyerhaeuser employees. **(Latham dep. 23:8-24:17; Roche dep. 95:18-22.)**

35. Latham was trained how to use a chainsaw by a Weyerhaeuser employee. **(Latham dep. 24:18-25:6; Latham dep. 27:3-9; Roche dep. 95:18-22; Roche dep. 96:4-8.)**

36. At the time of his injury in particular, Latham was using a chainsaw and was being trained on the chain saw by a Weyerhaeuser employee. **(Latham dep. 50:24-51:4.)**

37. Latham was trained how to use a lumber wrapping tool by a Weyerhaeuser employee. **(Latham dep. 25:15-26:7; Roche dep. 95:23-96:2.)**

38. Latham was trained how to measure lumber by a Weyerhaeuser employee. **(Latham dep. 27:11-14; Roche dep. 95:18-22.)**

39. Latham was told to upkeep the areas he worked in by a Weyerhaeuser employee. **(Latham dep. 27:15-28:2.)**

40. When Latham initially started at the Easton Facility, he shadowed Weyerhaeuser employees. **(Latham dep. 28:20-13.)**

### D. Supervisor

41. Latham did not have a supervisor at Aerotek; he had a recruiter. **(Latham dep. 11:23-12:1.)**

42. Latham's recruiter at Aerotek was Zachary Long. **(Latham dep. 12:2-5.)**

43. Zachary Long was not on site at the Easton Facility. **(Latham dep. 22:1-4; Roche dep. 94:15-22.)**

44. Zachary Long was never on site at the Easton Facility to examine Latham's work. **(Latham dep. 29:15-30:3; Roche dep. 94:15-21.)**

45. No Aerotek employee on site at the Easton Facility was Latham's supervisor. **(Latham dep. 21:19-21; Roche dep. 94:6-21.)**

### E. Supervision/Review of Work

46. When Latham had questions about his jobs at the Easton Facility, he would pose his questions to employees of Weyerhaeuser. **(Latham dep. 30:8-19.)**

47. When Latham had issues with his equipment at the Easton Facility, he would pose his complaints to an employee of Weyerhaeuser. **(Latham dep. 30:20-31:2.)**

48. As Latham performed his work and his work needed correction, conversations about corrections were had by Latham with employees of Weyerhaeuser. **(Latham dep. 31:3-13.)**

### F. Hours

49. After being initially assigned to Weyerhaeuser by Aerotek for a particular shift, Latham was assigned shifts by Weyerhaeuser. **(Latham dep. 33:4-9; Roche dep. 97:10-12.)**

50. Latham entered his time worked at Weyerhaeuser on a timecard system that was located in the office at the Easton Facility. **(Latham dep. 33:10-19; Roche dep. 36:6-14.)**

51. Latham did not report his time to Aerotek in any way; instead, his time was reported to Aerotek by Derek Roche. **(Latham dep. 33:20-22; Roche dep. 35:23-36:5.)**

### G. Removal/Termination

52. Latham's work at Weyerhaeuser ended when an employee of Weyerhaeuser told Latham his work was ending because he was not wearing safety equipment. **(Latham dep. 16:3-17:11; Latham dep. 20:4-12; Roche dep. 84:20-85:9.)**

53. Specifically, the Weyerhaeuser employee told Latham his services were no longer needed at the Easton Facility. **(Latham dep. 16:24-17:3.)**

54. Derek Roche communicated to Aerotek by email that Latham's last day at the Easton Facility was October 10, 2017 because he was not following safe work procedures. **(October 10, 2017 Email Chain (WEYER0000105-106) (Voss Decl., Ex. H); Roche dep. 84:5-85:22.)**

55. October 10, 2017 was Latham's last day at the Easton Facility. **(Aerotek Workforce Job Summary (Tobias Latham-Aerotek-06131886-00005) (Voss Decl., Ex. I); Latham dep. 15:10-16:17; Roche dep. 85:10-13.)**

### H. Dress Code

56. Weyerhaeuser had a dress code. **(Latham dep. 34:2-10; Roche dep. 96:24-97:7.)**

57. Latham was told what the dress code was by Derek Roche. **(Latham dep. 34:11-13.)**

58. Weyerhaeuser enforced the dress code. **(Roche dep. 97:8-9.)**

**I.    Equipment**

59.    Aerotek did not supply Latham with any shoes, vests, gloves, eyewear, tools, or any other gear of that nature. **(Latham dep. 12:14-18; Roche dep. 96:22-23.)**

60.    Latham was given safety training on computers at the Easton Facility. **(Latham dep. 23:18-24:2; Roche dep. 95:18-22.)**

61.    Latham used lumber-wrapping tools that were onsite at the Easton Facility. **(Latham dep. 26:9-27:1; Roche dep. 96:13-18.)**

62.    Latham was provided with the chainsaw he used at the Easton Facility by Weyerhaeuser. **(Latham dep. 28:3-5; Roche dep. 96:13-18.)**

63.    Latham was provided with the tape measure and speed square he used at the Easton Facility by Weyerhaeuser. **(Latham dep. 28:6-19; Roche dep. 96:13-18.)**

64.    Latham wore a hard hat at the Easton Facility, and the hard hat was supplied by Weyerhaeuser. **(Latham dep. 34:18-21; Latham dep. 58:14-22; Roche dep. 96:13-18.)**

65.    Latham wore hearing protection at the Easton Facility, and the hearing protection was supplied by Weyerhaeuser. **(Latham dep. 35:14-19; Roche dep. 96:13-18.)**

66.    Latham wore safety vests at the Easton Facility, and the safety vests were supplied by Weyerhaeuser. **(Latham dep. 35:20-36:1; Roche dep. 96:13-18.)**

67.    Latham used a two-way radio at the Easton Facility, and the radio was supplied by Weyerhaeuser. **(Latham dep. 36:2-6.)**

68.    Weyerhaeuser also supplied Latham with chaps, safety glasses, a cutter, a face shield, a skill saw, a safety cutting knife, pens, pencils, and sharpies. **(Roche dep. 96:13-18; Roche dep. 97:2-7.)**

69.    Weyerhaeuser purchased boots for Latham to use at the Easton Facility. **(Latham dep. 36:7-21; Roche dep. 96:13-18.)**

70. All of the work supplies given to Latham by Weyerhaeuser were necessary for Latham to perform his job at the Easton Facility. **(Roche dep. 96:19-21.)**

## V.   MISCELLANEOUS WORKERS' COMPENSATION ISSUES

71. At the time Latham was injured on August 28, 2017, he was banding lumber at a cut station at the Easton Facility, which was his job at the time. **(Latham dep. 37:6-18; Latham dep. 45:14-19; Rissmiller dep. 83:24-84:6.)**

72. At the time Latham was injured on August 28, 2017, Phillip Rissmiller was driving a forklift, which was his job at the time. **(Latham dep. 37:19-38:5; Rissmiller dep. 83:15-23 (Voss Decl., Ex. J).)**

73. At all times relevant to the Complaint Weyerhaeuser was acting by and through its employees who were acting within the course and scope of their employment with Weyerhaeuser. **(Compl. ¶ 4; Amd. Answer ¶ 4.)**

74. At all times relevant to the Complaint, Philip Rissmiller was acting as an employee of Weyerhaeuser and was at all times relevant acting within the course and scope of his employment with Weyerhaeuser. **(Compl. ¶¶ 6, 46-47; Amd. Answer ¶¶ 6, 46-47; Rissmiller dep. 8:20-23; Rissmiller dep. 83:21-23; Roche dep. 97:23-24.)**

75. Latham and Rissmiller did not have any personal issues or any personal animosity toward each other. **(Latham dep. 38:6-10; Rissmiller dep. 84:7-9.)**

76. Rissmiller did not injure Latham on purpose. **(Latham dep. 38:11-13; Rissmiller dep. 79:11-15; Rissmiller dep. 84:10-15.)**

77. Latham filed a workers' compensation claim petition against Allegis Group/Aerotek regarding the August 28, 2017 incident. **(Latham dep. 38:14-19; Plaintiff's Response to Interrogatories ¶ 24; Pond Lehocky Letter Feb. 16, 2018 ((Voss Decl., Ex. K).)**

78. Latham received workers' compensation benefits for the August 28, 2017 incident. **(Latham dep. 38:20-22; Plaintiff's Response to Interrogatories ¶ 24; Decision Rendered Cover Letter June 21, 2018 at 10.)**

79. Allegis Group was insured for workers compensation claims by Indemnity Insurance Company of North America. **(Decision Rendered Cover Letter June 21, 2018 at 7 (Voss Decl., Ex. L).)**

80. Latham reached a settlement of his workers' compensation claim. **(Latham dep. 39:13-15; Latham dep. 40:13-16; Latham dep. 41:6-10; Plaintiff's Response to Interrogatories ¶ 24.)**

81. The settlement was approved by a Workers' Compensation Judge. **(Decision Rendered Cover Letter June 21, 2018 at 5.)**

## VI. LATHAM-AEROTEK CONTRACT

82. On August 1, 2017, Latham entered into a contract with Aerotek, Inc. (hereafter, the "Latham-Aerotek Contract"). **(Latham-Aerotek Contract (Tobias Latahm-Aerotek-06131886-00017-19); Latham dep. 10:24-11:6.)**

83. The signatories on the Latham-Aerotek Contract are Tobias Latham and a representative of Aerotek. **(Electronic Disclosure (Tobias Latham-Aerotek-06131886-00015) (Voss Decl., Ex. M); Latham dep. 10:1-19; Latham-Aerotek Contract (Tobias Latham-Aerotek-06131886-00017-19); Latham dep. 10:24-11:6.)**

84. The Latham-Aerotek Contract describes a conditional offer of employment for Tobias Latham at Weyerhaeuser Company. **(Latham-Aerotek Contract (Tobias Latahm-Aerotek-06131886-00017.)**

85. The Latham-Aerotek Contract identifies "WEYERHAEUSER COMPANY" as the "Client." **(Latham-Aerotek Contract (Tobias Latahm-Aerotek-06131886-00017.)**

86. Paragraph 18 of the Latham-Aerotek Contract states, in total, as follows:

**18. Limitation of Liability** - To the extent permitted by law, you, on your own behalf and on behalf of anyone claiming by or through you, waive any and all rights you have, or may have, to claim or assert a claim, suit, action or demand of any kind, nature or description, including without limitation, claims, suits, actions or demands for personal injury or death whether arising in tort, contract or otherwise, against Client or Client's customers, agents, officers, directors, or employees, resulting from or arising directly or indirectly out of your employment with Aerotek, Inc, except as to any claims you assign to Aerotek, Inc under this Agreement. You recognize and agree that Aerotek, Inc provides workers' compensation coverage for such things as on-the-job injuries or occupational diseases incurred while on Assignment for Aerotek, Inc, and to the extent permitted by law, you agree to look solely to Aerotek, Inc and/or its insurer for damages and/or expenses for any such claims, suits, actions, or demands relating to bodily injury, illness, or death incurred while on Assignment. In furtherance of the foregoing and in recognition that any work related injuries which might be sustained by you are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the Client based on the same injury or injuries, and to the extent permitted by law, YOU HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS YOU MIGHT HAVE to make claims or bring suit against the Client for damages based upon injuries which are covered under such Workers' Compensation statutes. You agree to notify Aerotek, Inc if you believe that there are any unsafe conditions at the Client worksite or facility.

**(Latham-Aerotek Contract (Tobias Latham-Aerotek-06131886-00019) at ¶ 18.)**

87. Paragraph 19 of the Latham-Aerotek Contract, states, in total, as follows:

**19. Attorneys' Fees** - To the extent permitted by law, you agree that in the event of any dispute or claims: (a) arising out of or relating in any way to your employment or relationship with Aerotek, Inc; or (b) seeking to enforce the obligations contained in this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and all costs relating to the dispute or claims and any process through which such a dispute or claims may be resolved.

**(Latham-Aerotek Contract (Tobias Latham-Aerotek-06131886-00019) at ¶ 19.)**

WHEREFORE, Defendants request that the Court grant this Motion and enter judgment in their favor on all Counts in the Complaint and enter an order awarding Defendants their reasonable attorney's fees and costs.

Respectfully submitted,

Dated: July 24, 2019         /s/ Joshua J. Voss
                             Joshua J. Voss (No. 306853)
                             KLEINBARD LLC
                             Three Logan Square
                             1717 Arch Street, 5th Floor
                             Philadelphia, PA 19103
                             Ph: (267) 443-4114
                             Fax: (215) 568-0140
                             Email: jvoss@kleinbard.com

                             *Attorney for Defendants*

## INDEX OF EXHIBITS

| Exhibit | Description |
|:---:|---|
| A | Plaintiff's Complaint |
| B | Defendants' Amended Answer to Complaint |
| C | Tobias Latham Deposition Transcript |
| D | Latham-Aerotek Contract (Tobias Latham-Aerotek-06131886-00017-19) |
| E | Plaintiff's Response to Defendants' Interrogatories |
| F | Weyerhaeuser-Allegis/Aerotek Contract (WEYER00017-51) |
| G | Derek Roche Deposition Transcript |
| H | October 10, 2017 Email Chain (WEYER000105-106) |
| I | Aerotek Workforce Job Summary (Tobias Latham-Aerotek-06131886-00005) |
| J | Phillip Rissmiller Deposition Transcript |
| K | Pond Lehocky Letter Feb. 16, 2018 |
| L | Decision Rendered Cover Letter June 21, 2018 |
| M | Electronic Disclosure (Tobias Latham-Aerotek-06131886-00015) |

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of Defendants' Motion for Summary Judgment, Voss Declaration, and Brief in Support, via the Court's CM/ECF system on the following:

>Robert J. Mongeluzzi
>Jeffrey Goodman
>Sam Dordick
>SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
>1650 Market Street, 52nd Floor
>Philadelphia, PA 19103
>rmongeluzzi@smbb.com
>JGoodman@smbb.com
>SDordick@smbb.com
>*Attorneys for Plaintiff*

Dated: July 24, 2019

/s/ Joshua J. Voss
Joshua J. Voss (No. 306853)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (267) 443-4114
Fax: (215) 568-0140
Email: jvoss@kleinbard.com

*Attorney for Defendants*