# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TOBIAS LATHAM,

*Plaintiff,*

v.

WEYERHAEUSER COMPANY, et al.,

*Defendants.*

CIVIL ACTION
NO. 19-0451

**PAPPERT, J.**                                                    **October 3, 2019**

## MEMORANDUM

Tobias Latham was hired by Aerotek, Inc., which provides temporary staffing services to companies in various industries. Aerotek sent Latham to work at Weyerhaeuser Company's Easton, Pennsylvania Facility, where Latham was struck by lumber that fell off a forklift. He now brings this personal injury suit against Weyerhaeuser and its employee, Phillip Rissmiller. Defendants filed a Motion for Summary Judgment, arguing that they are immune from suit under the Pennsylvania Workers' Compensation Act. The Court, after reviewing the record and holding a hearing, grants the Motion for the reasons that follow.

I

On September 21, 2009, Aerotek contracted with Weyerhaeuser to provide temporary staffing services. (Weyerhaeuser-Aerotek Agreement 2, ECF No. 27-8.)[1] The Agreement between the companies set forth the terms and conditions for those

---

[1]     Citations to the Weyerhaeuser-Aerotek Agreement reflect ECF pagination rather than the Agreement's internal pagination.

services; namely, Aerotek maintained responsibility for "all employment matters," including, *inter alia*, daily check-ins, hiring, firing, discipline, payroll processing, candidate interviews and other issues raised by assigned personnel.  (*Id.* at 11.)  Moreover, the Agreement defined Aerotek as the "sole Employer for personnel" that would cover expenses related to "payroll, insurance, benefits and associate taxes." (*Id.*)  For its part, Weyerhaeuser would control the "daily management and supervision of all [Aerotek] assigned personnel."  (*Id.*)

In August of 2017, Aerotek recruiter Zachary Long assigned Latham to work as a groundskeeper at Weyerhaeuser's Easton Facility.  (Latham Dep. 13:4–11; 14:15–17, ECF No. 26-1.)  Before starting, Latham met with Weyerhaeuser's Site Operations Manager Derek Roche to discuss job-site expectations, dress-code requirements and general protocol. (Latham Dep. 14:4–9.)

When Latham arrived at the Easton Facility for his first day of work, he was trained by other Weyerhaeuser employees and watched safety videos on Weyerhaeuser's computers.  (Latham Dep. 6:23–24; 19:7–20; 23:9–17.)  At the beginning of every shift, Roche assigned Latham tasks to complete.  (*Id.* at 18:5–16.)  Mike Miller, a Weyerhaeuser day-shift supervisor, reassigned Latham to other projects as needed.  (*Id.* at 20:5–10; Roche Dep. 94:10–13, ECF No. 26-1.)  Aerotek did not maintain an on-site supervisor to oversee Latham.  (Roche Dep. 94:19–22.)  Before and after his shifts, Latham clocked in and out of work.  (Latham Dep. 33:10–18.)  Roche verified the hours and input the data into a website provided by Aerotek so that Aerotek could pay temporary workers like Latham.  (Roche Dep. at 36:6–14.)

The Weyerhaeuser-Aerotek Agreement gave Aerotek the responsibility to "provide necessary and adequate personal protective equipment ("PPE") for its employees/subcontractors." (Weyerhaeuser-Aerotek Agreement 6.) In actuality, however, Weyerhaeuser provided Latham with tools such as lumber-wrapping equipment, a chainsaw, a tape measure, a speed square and a two-way radio. (Latham Dep. 26:9–28:19; Roche Dep. 96:13–18.) He also wore protective clothing provided by Weyerhaeuser, including a Weyerhaeuser-logoed red hard hat, hearing protection and a safety vest. (Latham Dep. 35:14–36; 58:11–22; Roche Dep. 96:13–18.) Additionally, Weyerhaeuser furnished Latham with funds to purchase steel-toed boots. (Latham Dep. 36:7–21; Roche Dep. 96:13–18.) When Latham had any questions about the equipment, he asked Miller. (Latham Dep. 30:20–31:2.)

On August 28, 2017, while Latham was working a shift, Weyerhaeuser employee Phillip Rissmiller was operating a forklift carrying 48-foot-long pieces of lumber banded together with plastic straps. (Compl. ¶¶ 13–14, ECF No. 1; Am. Answer ¶¶ 13–14, ECF No. 19; Pl.'s Resp. Defs.' Interrogs. 2, ECF No. 26-1.) The forklift struck another piece of lumber, which caused the lumber on the forklift to break free from its bands and hit Latham, injuring his head, shoulder, back and knee. (Compl. ¶¶ 15–16; Am. Answer ¶¶ 15–16; Pl.'s Resp. Defs.' Interrogs. 3.)

A few weeks after the accident, Roche sent an email to Jim Tersigni, an Aerotek account manager, stating that Latham had failed to follow "safe work place procedures several times in the last two days, and he does not seem to be responding to our coaching." (October 10, 2017 Email, ECF No. 27-9.) Roche asked Aerotek to make

October 10, 2017 Latham's "last day." (*Id.*) Tersigni replied a few hours later: "I spoke with Tobias. He knows not to return tomorrow." (*Id.*)

In 2018, Latham filed a workers' compensation claim against Aerotek for the injuries sustained in the August 28, 2017 incident. (Pl.'s Resp. Defs.' Interrogs. 7.) He later settled the claim. (*Id.*) He subsequently filed this lawsuit. Weyerhaeuser and Rissmiller now argue that, under the borrowed servant doctrine, they are immune from suit under the Pennsylvania Workers' Compensation Act ("PWCA"). *See* (Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No. 26). In the alternative, they contend that Latham contractually waived any and all claims against them. (*Id.*) Plaintiff opposed Defendants' Motion. (Pl.'s Resp. Opp'n Mot. Summ. J. ("Pl.'s Resp."), ECF No. 27.) The Court heard oral argument on October 1, 2019. (ECF No. 33.)

## II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d. Cir. 2002); *see* Fed. R. Civ. P. 56(a). A genuine issue of material facts exists where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice. *Id.* at 252. There must be evidence by which a jury could reasonably find for the non-moving party. *Id.*

When reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel*

*v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (quoting *Norfolk S. Ry. Co v.*

*Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008)).  A court may not, however, make

credibility determinations or weigh the evidence in considering motions for summary

judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also*

*Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III

### A

Pursuant to the borrowed servant doctrine, Weyerhaeuser and Rissmiller argue

that Weyerhaeuser is immune from suit as Latham's "statutory employer" under the

PWCA, 77 Pa. Stat. § 1 *et seq.*, and that Rissmiller, as a co-employee acting within the

scope of his employment, is also immune, *id.* § 72.  In response, Latham contends that

the terms of the Agreement raise a genuine issue of material fact as to which entity—

Weyerhaeuser or Aerotek—had the right to control the manner of Latham's work.

Under Pennsylvania law, employees injured at work are limited to the

compensation available to them through the PWCA and are generally barred from

seeking further damages against their employer.  *See* 77 Pa. Stat. § 481(a) ("The

liability of an employer under this act shall be exclusive and in place of any and all

other liability to such employees . . . .").  The immunity from suit provided by the PWCA

"extends from the direct employer to another entity that has 'borrowed' the employee if

the latter exercises sufficient control over the employee."  *Ochs v. Reading Hosp.*, 647 F.

App'x 126, 128 (3d. Cir. 2016) (unpublished) (citing *Claudio v. MGS Mach. Corp.*, 798 F.

Supp. 2d 575, 581 (E.D. Pa. 2011)).  According to the Supreme Court of Pennsylvania:

> The test for determining whether a servant furnished by one person to another
> becomes the employee of the person to whom he is loaned is whether he passes
> under the latter's right of control with regard not only to the work to be done but

5

also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised.

*JFC Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay)*, 680 A.2d 862, 864 (Pa. 1996) (internal citations omitted). Other relevant factors include the "right to select and discharge the employee," "the skill or expertise required" to work, and the "payment of wages." *Id.* These additional factors serve as guidance, but they exist only as "peripheral matters" that do not control the outcome. *Wilkinson v. K-Mart*, 603 A.2d 659, 661 (Pa. Super. Ct. 1992). Moreover, when an employment-services agreement indicates that one entity will maintain the status as "employer," such contractual provisions are not dispositive. Rather, "the determining factor is the actual conduct of the parties and whether [the employer] actually had the power to control Claimant's work and manner of performance." *Red Line Express Co. v. Workmen's Comp. Appeal Bd. (Price)*, 588 A.2d 90, 94 (Pa. Cmmw. Ct. 1991). In sum, the essential question the Court must ask is "who has the right to control and direct the manner of the employee's work." *Ochs*, 647 F. App'x at 128.

B

The record evidence establishes that Weyerhaeuser was Latham's statutory employer under the PWCA. The undisputed facts demonstrate that Weyerhaeuser had the right to control, and did control, Latham's daily work. From the beginning of his tenure at Weyerhaeuser, Latham met with Weyerhaeuser's Site Operations Manager, Derek Roche, to discuss job expectations, including what to wear and general protocol. (Latham Dep. 14:4–9.) Latham received training from senior Weyerhaeuser employees (Latham Dep. 19:7–20; Roche Dep. 95: 11–16), and either Roche or Miller assigned Latham his daily tasks (Roche Dep. 94:6–13). Importantly, Aerotek never maintained a

daily supervisor at the Easton Facility to assign Latham tasks or oversee the performance his work. (Roche Dep. 94:19–22.) Weyerhaeuser indisputably maintained control over Latham's daily work at the Easton Facility. *See, e.g.*, *Claudio*, 798 F. Supp. 2d at 584 (finding the employer "exercised the dispositive control" by creating assignments and instructing the plaintiff how to complete them).

The lumber-wrapping tools, chainsaw, tape measure, speed square and two-way radio that Latham needed to complete his work all came from Weyerhaeuser. (Latham Dep. 26:9–28:19; Roche Dep. 96:13–18.) Weyerhaeuser also supplied Latham with protective gear to wear. (Latham Dep. 35:14–36; 58:11–22; Roche Dep. 96:13–18.) That Weyerhaeuser either supplied or purchased the necessary equipment for Latham is a relevant factor in demonstrating that Weyerhaeuser maintained control over Latham's work. *See Zaragoza v. BASF Constr. Chems., LLC*, 2009 WL 260772, at *3 (E.D. Pa. Feb. 3, 2009) (ruling that defendant was plaintiff's statutory employer where the defendant provided equipment, dictated daily assignments and maintained scheduling responsibilities over the plaintiff).

To the extent that Aerotek maintained responsibility over payroll, benefits and taxes, these factors are only "peripheral matters." *Wilkinson*, 603 A.2d at 661. And whether Aerotek or Weyerhaeuser had the ultimate authority to terminate Latham also carries little weight in the Court's analysis. *See JFC Temps, Inc.*, 680 A.2d at 864 (explaining the right to select and discharge an employee is relevant but not determinative in the borrowed servant analysis).

C

Latham relies primarily on the Agreement to support his argument that Aerotek, not Weyerhaeuser, maintained the right to control Latham's work. (Pl.'s Resp. 10–15.) He points to the fact that the Agreement defines Aerotek as the "sole Employer" responsible for, *inter alia*, check-ins, hiring, firing, discipline, interviewing candidates, payroll and employee benefits. *See* (Weyerhaeuser-Aerotek Agreement 11). Latham argues that these contractual provisions should carry great weight in the Court's application of the borrowed servant doctrine. At oral argument, Plaintiff's counsel reiterated this position. (Oct. 1, 2019 Hr'g Tr. 22:13–19, ECF No. 33.)

Latham is incorrect. Again, Pennsylvania law requires courts to look at the actual conduct of the parties rather than at the "characterization of the employee-employer relationship." *Zaragoza*, 2009 WL 260772, at *4. As explained by one Pennsylvania court applying the borrowed servant doctrine, "although the provisions of the Lease tend to indicate that the Claimant was to remain an employee of Princeton, the determining factor is the *actual conduct* of the parties and whether Red Line actually had the power to control Claimant's work and manner of performance." *Red Line*, 588 A.2d at 94 (emphasis added); *see also Wilkinson*, 603 A.2d at 662 (explaining that reliance on a contractual provision to *conclusively* establish which party is the employer is "without merit").

The Third Circuit Court of Appeals, albeit in an unpublished decision, recently applied the reasoning in *Red Line* and *Wilkinson* to affirm a grant of summary judgment in a case factually analogous to this one. *Ochs*, 647 F. App'x at 129. In *Ochs*, the plaintiff relied heavily on an agreement between a staffing agency and a hospital to

contend that only the staffing agency had the right to control the manner of his work. *Id.* The court rejected this argument, maintaining that the reality of the hospital's control over Ochs outweighed any reliance on the contract. *Id.*

Even if the Court were to give weight to Latham's contention that the Agreement should reign supreme, the Agreement is not as clear cut as Latham contends. In fact, the Agreement indicates that "Weyerhaeuser is responsible for all daily management and supervision of all [Aerotek] assigned personnel." (Weyerhaeuser-Aerotek Agreement 11.) By reserving this role for Weyerhaeuser, the Agreement itself contemplates Weyerhaeuser's right to control the manner of Latham's performance.

The undisputed facts show that Weyerhaeuser provided work supplies and safety equipment for Latham's use, trained him on how to perform tasks, dictated the dress code, created his daily assignments, and supervised his day-to-day performance at the Easton Facility. Pursuant to the PWCA, Weyerhaeuser is thus immune from suit.

## D

Rissmiller is likewise immune from suit. Under the PWCA, "a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person" who sustained the injury. 77 Pa. Stat. § 72. Our Court has applied the statutory bar for co-employees in the borrowed servant context, so long as the injury occurred within the scope of the employment. *See Watkins v. Gould*, 2014 WL 7232242 (E.D. Pa. Dec. 18, 2014).

Latham and Rissmiller were employees at Weyerhaeuser when the accident occurred, and Latham does not contend otherwise. (Latham Dep. 37:6–18; Rissmiller Dep. 83:15–23, ECF No. 27-6; Oct. 1, 2019 Hr'g Tr. 15:21–16:1.) Both were acting within the scope of their employment when the forklift that Rissmiller was operating caused the accident that injured Latham. (*Id.*) Latham does not claim that Rissmiller intentionally injured him. (Latham Dep. 38:11–13.) At oral argument, counsel agreed that if the Court were to grant summary judgment in favor of Weyerhaeuser, Rissmiller would also be entitled to summary judgment.[2] (October 1, 2019 Hr'g Tr. 16:3–6.)

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[2] The Defendants also argued that Latham contractually waived all claims against Weyerhaeuser and Rissmiller. *See* (Defs.' Mem. 16–19). The Court need not reach the contractual waiver issue given its decision on the immunity issue in the Defendants' favor. *See* (Oct. 1, 2019 Hr'g Tr. 2:20–24).